COMMONWEALTH OF
MASSACHUSETTS
v.
ELM MEDICAL LABORATORY,
INC., ET AL

Civ. A. No. 41839

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

January 29, 1981

Bellotti, (AG), for the plaintiff.
Phillip E. Pofcher for the defendant.

## MEMORANDUM AND ORDER ON THE MOTION OF THE DEFENDANT TO DISMISS CROSS-CLAIM

YOUNG, J. This matter comes before the Court on the motion of the Department of Public Health (the Department) to dismiss the cross-claim asserted by Elm Medical Laboratory (Elm). The Department moves to dismiss on the grounds that Elm has failed to state a cause of action, and that the Department, as an agency of the Commonwealth, is immune from liability because of the "discretionary function" and "intentional tort" exceptions to the Massachusetts Tort Claims Act. G.L. c. 258, § 10(b) and (c).[1]

On May 9, 1980, the Attorney General of the Commonwealth commenced this action against Elm alleging that it was engaged in unfair or deceptive acts or practices in the operation of its medical laboratory, in violation of G.L. c. 93A, § 4. The Attorney General initiated the action following a survey by the Department of Public Health and the U.S. Department of Health and Human Services which indicated erroneous findings in the PAP smear testing conducted by Elm. This Court issued a preliminary injunction on May 9, 1980, restraining Elm from performing the PAP tests, and Elm ceased doing business. On July 28, 1980, the Department was added as a party defendant to this litigation, and Elm filed this cross-claim.

In bringing its motion to dismiss, the Department alleges that the conduct complained of by Elm involves the performance of failure to perform discretionary functions, thus insulating the Department from suit under remaining vestiges of the doctrine of governmental immunity. After the leading case of Whitney v. City of Worcester, 373 Mass. 208 (1977), governmental entities are immune from liability "[w]hen the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning. . . ." Id. at 218. This Court agrees, and Elm apparently concedes, that the actions of the Department calling a "health alert" fall within the rubric of "discretionary" activities. In furtherance of its position the Department cites G.L. c. 111, § 5, authorizing it to conduct investigations and disseminate relevant information on matters of public concern.

In bringing its cross-claim, however, Elm relies upon G.L. c. 258, § 10(a), which provides that the Tort Claims Act shall not apply to "any claim based upon an act or omission of a public employee when such employee is exercising **due care** in the execution of any statute or any regulation. . . ." (emphasis added). Elm contends that the Department failed to exercise such due care when it issued the health alert, and when it allegedly refused to reinspect the laboratory. The parties do not cite and research does not disclose any Massachusetts cases dealing with this aspect of section 10(a). Thus it is appropriate to look to the decisions under the nearly identical provisions of the Federal Tort Claims Act, 28 U.S.C. § 2680(a). The United States Supreme Court in **Hatahley v. United States**, 351 U.S. 173 (1956), construed the "due care" language of section 2680(a) to imply "at least some minimal concern for the rights of others." **Id.** at 181. The Court decided that the officials in **Hatahley** were not exercising due care in their enforcement of federal law because they "proceeded with complete disregard for the property rights of the petitioners." **Id.**

In order to present an actionable claim under section 10(a) of the Massachusetts Tort Claims Act, Elm must plead or show

[1] . . . right of a tort . . . any claim based . . . liance or the failure . . . discretionary function or du . . . public employer or employee . . . the scope of his office or employ . . . not the discretion involved is . . . (b) any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations; G.L. c. 258, § 10(b) and (c).

by way of affidavit that the Department failed to exercise due care in the preparation and issuance of the "Health Alert." Thus far Elm has failed to do so. The Department prior to the issuance of the alert and the request for the preliminary injunction. Conversely, Elm's cross-claim consists of a number of conclusory allegations that fail to identify a potential lack of due care on the part of the Department. The policy of the Commonwealth favors the amendment of pleadings, however, unless a sound reason appears for denying such a motion. Castellucci v. United States Fidelity and Guarantee Co., 372 Mass. 288, 289 (1977).

Prior to the entry of an order, additional considerations require mention. Under Nader v. Citron, 372 Mass. 96 (1977), this Court must uphold a complaint against a motion to dismiss "if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." Id. at 104. Aside from the potential claims discussed above, it is conceivable that the defendant President of Elm, Mr. Baez-Giangreco, may present a cause of action alleging violation of rights afforded him under G.L. c. 12, §§ 11H-11I. Sections 11H and 11I parallel aspects of 42 U.S.C. § 1983 in creating the right to a civil action against any person or persons who interfere with the exercise of any constitutional or statutory rights of another. Commentators have suggested that public release of such health data without affording a prior hearing to the entity most likely to be affected may violate the right to procedural due process. Note, 85 Harv.L.Rev. 861, 864-870 (1972). See generally, Note, "Health Regulation of Naturally Hazardous Foods: The FDA Ban on Swordfish," 85 Harv.L.Rev. 1025, 1036 n.90. The statute provides safeguards against the unlawful action of individuals and no compelling reason exists to prohibit Mr. Baez-Giangreco from amending his cross-claim to join the individual representatives or supervisory officials of the Department of Public Health who may have directed or participated in the activities which allegedly deprived Mr. Baez-Giangreco of his rights. See, e.g., Duchesne v. Sugarman, 566 F.2d 817, 831 (2d Cir. 1977); Kedra v. City of Philadelphia, 454 F. Supp. 652, 674-675 (E.D. Pa. 1978).[2]

In view of the foregoing, the following order shall enter. The Department's motion to dismiss Elm's cross-claim is allowed, but the defendants are afforded the opportunity to amend their pleadings within twenty days of the date of this order (1) to plead sufficient facts which underlie its allegation that the Department failed to exercise due care in the execution of its statutory duty, and (2) to bring in as parties-defendant the actual officers involved in the allegedly unlawful activity, against whom the individual defendant might have an action.

William G. Young
Justice of the Superior Court

---

[2] It is appropriate to note the controversy in the federal courts regarding the pleading requirements of civil rights claims under Fed. R. Civ. P. 8(a)(2). The Court of Appeals for the Third Circuit requires great specificity of allegations in a civil rights complaint. See, Negrich v. Hohn, 379 F.2d 213, 214-215 (3d Cir. 1967); Jones v. McElroy, 429 F.Supp. 843, 869 (E.D. Pa. 1977). Although the majority of the federal cases do not subscribe to the theory that greater specificity in pleading is called for in civil rights cases, the courts will dismiss a complaint as insufficient where the allegations contained therein are vague or conclusory. 2A Moore's Federal Practice ¶ 8.17 [4.1], at 8-178. Defendants should pay particular attention to the pleading requirements of Mass. R. Civ. P. 8(a), should they determine that a civil rights action is appropriate in the present circumstances.